THE CHELSEA LAND AND IMPROVEMENT COMPANY

*v.*

JOHN S. WESTCOTT.

[Decided April 21st, 1909.]

A covenant in a deed of riparian lands, providing for a line for solid filling and beyond that an exterior line for piers, and stipulating that the land beyond the solid filling line shall not be used for any purpose except the erection of a pier or piers thereon under which the tide may ebb and flow, is not violated by the erection of a boat house on the piers resting on the land, since, so long as the land between the line of the solid filling and the exterior pier line has nothing erected on it except piers, the covenant is not violated. The word "pier" generically means a support, and in its precise use the absence or presence of water surrounding it is immaterial, though its customary use is with respect to projections into water.

On demurrer to bill.

*Mr. Robert H. Ingersoll,* for the demurrant.

*Mr. Ulysses G. Styron,* for the complainant.

GARRISON, V. C.

The bill charges that the state granted to the Chelsea Land and Improvement Company certain riparian lands at Atlantic City, New Jersey, and in the instrument transferring the title provided with respect to the lands under water lying between the exterior line for solid filling and the exterior line for piers as fixed by the commissioners that "said land * * * is not to be used for any purpose whatsoever except the erection of a pier or piers thereon, under which the tide may ebb and flow, and no solid fillings shall be placed thereon."

The Chelsea Land and Improvement Company deeded a portion of the riparian lands derived from the state to the defendant,

John S. Westcott, and in the deed from the land company to Westcott inserted the provision above quoted *in haec verba.*

John S. Westcott has planned to erect a boat house upon the pier or piers, which latter rest upon the land in question.

The contention of the complainant is that such an act upon the part of Westcott is a violation of the covenant or restriction.

I think it perfectly clear that the intention in fixing a line for solid filling, and, beyond that, an exterior line for piers, was to limit the distance into the water that solid structures interfering with navigation might go, beyond which only such structures in the water should be permitted as would not prevent navigation.

The generic meaning of the word "pier" is a support, and in its precise use the absence or presence of water surrounding it is immaterial. A "pier" might rest upon solid ground, utterly without reference to the presence or absence of water. Its more customary use, however, is with respect to projections into water.

It will be observed that the language is "pier or piers," and this connotes the presence of one or more of these supporting columns. What is supported on the columns does not change the name or character of the substructure. So long as the land between the line of solid filling and the exterior pier line has nothing erected on it excepting piers, I do not think that the covenant has been violated.

The demurrer will be sustained, with costs.